J-S49017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  A.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  A.C., MOTHER | No. 589 MDA 2015 |

Appeal from the Order entered March 2, 2015,
in the Court of Common Pleas of Schuylkill County,
Juvenile Division, at No(s):  CP-54-DP-0000088-2013

BEFORE:  BENDER, P.J.E., ALLEN, and OLSON, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 17, 2015**

A.C. ("Mother") appeals from the order which changed the permanency goal of her minor daughter, A.C. ("Child"), born in March of 2013, from adoption "to the concurrent goals of Adoption and Return to Parent (father)."  Trial Court Opinion, 4/27/15, at 2.  We affirm.

The trial court summarized the relevant factual history as follows:

[Schuylkill County Children and Youth Services (the Agency)] obtained temporary custody of [Child] two days after her birth and [Child] was placed into the foster home of [J.B. and K.B. (Foster Parents)].[1]  The Agency worked towards reunification of the child with [Mother], who failed to comply with their recommendations.  In March 2014, the Agency changed the goal to adoption; however, paternity tests excluded the original putative father and they had not yet identified [Child's] biological father.

In May 2014, paternity tests revealed [J.D. (Father)] as [Child's] father.  While [Father] originally supported adoption of [Child] by his parents, he retained counsel and sought custody of [Child] himself at the permanency review hearing dated November 10, 2014.  At that hearing, the paternal grandparents were ruled out as resources for non-compliance with Agency

---

[1] Child was adjudicated dependent on April 15, 2013.

requirements and the court ordered limited visitation for [Father] with [Child] at Agency offices under their supervision, but did not change the placement goal.

Trial Court Opinion, 4/27/15, at 2-3.

Another permanency review hearing was held on March 2, 2015, during which the trial court heard the testimony of Agency caseworker, Justine Keefer; Foster Mother; and Father. Following the hearing, the court issued its order changing Child's permanency goal from adoption to return to parent concurrent with adoption. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother now raises the following issue for our review: "Did the trial court err and commit an abuse of discretion when it determined that [Child's] best interests would be served by changing the goal from adoption to the concurrent goals of adoption and reunification with a parent?" Mother's Brief at 3.

We consider Mother's issue mindful of the following:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement;

(2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, the trial court concluded that changing Child's permanency goal to return to parent concurrent with adoption was in Child's best interest. Trial Court Opinion, 4/27/15, at 8. The court reasoned that "the record supports concurrent planning for a limited duration in which the Agency provides services to the natural father, while additionally pursuing adoption by the foster parents." *Id.* The court explained that Father has participated in visits with Child consistently and followed the recommendations of the Agency. *Id.* at 7. The court further stated, "given the unique facts of this case, we found that it was appropriate for the Agency to have more time to explore [Child's] bond with her natural father and to assess visitation in his home." *Id.* at 8.

Mother argues that the trial court's decision was not supported by clear and convincing evidence. Mother's Brief at 8. Mother contends that Father knew that he may be Child's father as early as June of 2013, but that

Father did not persist in seeking a paternity test, and that Father did not initially request custody of Child even after a paternity test was performed. *Id.* at 9-11. Mother also emphasizes, *inter alia*, that Child is bonded with her foster parents, and that she is doing well in their care. *Id.* at 11.

After a thorough review of the record, we conclude that Mother is not entitled to relief. During the March 2, 2015 permanency review hearing, Agency caseworker, Justine Keefer, testified that Child is "closely bonded" with her foster parents, and that Child calls her foster parents "Mom and Dad." N.T., 3/2/15, at 8, 14. However, Ms. Keefer recommended that Child's permanency goal be changed to reunification. *Id.* at 8. Ms. Keefer explained that Father "has requested wanting to have his child with him. He's done the services that the Agency has asked and he's visited with [Child]. So there is no safety issue in [Father's] home at the moment so we would like to work on reunification." *Id.* at 8. Ms. Keefer noted that Father has attended all of his visits with Child, and that there have been "no issues" during the visits. *Id.* at 4, 6. Ms. Keefer further recommended that visits transition from supervised at the Agency to supervised at Father's home, where Father resides with his wife and three other children. *Id.* at 5-6. In addition, Ms. Keefer intended on increasing the visits from two hours biweekly to three hours biweekly. *Id.* at 4, 7.

Foster Mother testified that Child is doing well in her care, and that she is developmentally on target. *Id.* at 22. Foster Mother reported that Child

runs to her at the end of visits with Father. *Id.* at 22. Foster Mother further stated that, following visits with Father, Child is "cranky, clingly, doesn't want to be away from me, she doesn't sleep at night. It takes a day to get back to normal." *Id.* at 23.

Father testified that he is cooperating with the Agency so that Child can be placed in his care. *Id.* at 26. Father stated that his relationship with Child had improved during the past several months, and that Child is "more open. She talks more. She plays more with me." *Id.* at 28. According to Father, Child is "real happy" during visits, and they have had "no problems." *Id.* at 26. Father denied that Child runs to Foster Mother at the end of visits, and stated that he hands Child to Foster Mother. *Id.* at 28.

Father further testified that he does not work, and is on disability for "mental health" issues. *Id.* at 29. Father's wife also does not work. *Id.* at 30. Father stated that he has been looking for a part-time job to which he can walk because he does not own a car, and because "I really don't know the bus schedules. I've never ridden or drove on a bus." *Id.* at 31.[2]

Accordingly, the record supports the trial court's conclusion that a permanency goal of return to parent with a concurrent goal of adoption would be in Child's best interest. Admittedly, Child is bonded with her foster

---

[2] During a previous permanency review hearing on November 10, 2014, Father stated he first suspected that he was Child's father approximately four or five months after Child's birth, and that he asked the Agency to perform a paternity test. N.T., 11/10/14, at 40, 47. Father claimed that the Agency refused to perform a paternity test, and that he then did "[n]othing. I just said heck with it . . . ." *Id.* at 40-41, 47-48.

parents, and Father delayed in seeking custody of Child for, at the very least, a period of about six months after discovering that he was her father. However, it was for the trial court, not this Court, to weigh those considerations against other evidence presented in Father's favor. Father has followed the recommendations of the Agency, and has participated regularly in visits with Child. The trial court's order will permit the Agency to evaluate Father's ability to care for Child, while simultaneously facilitating adoption in the event Father fails to progress. We discern no abuse of discretion.

Because we conclude that Mother's claim does not entitle her to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_____
JosephD.Seletyn,Esq.
Prothonotary

Date: 8/17/2015